### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FREDA M. SATTERFIELD ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL NO. 06-716-JPG |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

### REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Plaintiff, Freda M. Satterfield, seeks judicial review of a final decision of the Commissioner of Social Security denying her March, 2004, applications for disability benefits and supplemental security income.[1] Ms. Satterfield's applications were denied following an Administrative Law Judge's (ALJ) determination that she was not disabled. The decision became final when the Appeals Council declined to review the ALJ's decision. Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) and 42 U.S.C. §1383(c)(3).

To receive disability benefits or supplemental security income, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted as the defendant in this action.

previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(B), 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry that must be followed in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner must determine in sequence: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets or equals one listed by the Commissioner, (4) whether the claimant can perform his or her past work, and (5) whether the claimant is capable of performing any work in the national economy. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at Step 5 to show that the claimant can perform some other job. *Id.*

At the time of the ALJ's decision, plaintiff was 43 years old. She is pursuing an associate's degree in child care and has experience working on an assembly line. The ALJ evaluated plaintiff's application through Step 5 of the sequential analysis and decided that plaintiff's medically determinable disorders were severe in the sense that they significantly interfered with her ability to perform basic work activities but did not meet or equal one of the impairments listed in the Social Security regulations. The ALJ also determined that plaintiff could not perform her past relevant work but was not disabled because she retained the ability to perform a significant number of unskilled sedentary jobs (R. 11-19).

Under the Social Security Act, a court must sustain the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" of proof. The standard is satisfied by "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Because the Commissioner of Social Security is responsible for weighing the evidence, resolving conflicts in the evidence, and making independent findings of fact, this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Id*. However, the Court does not defer to conclusions of law, and if the Commissioner makes an error of law or serious mistakes, reversal is required unless the Court is satisfied that no reasonable trier of fact could have come to a different conclusion. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

### I.     Listing 12.05

Plaintiff seeks reversal and an award of benefits, targeting the ALJ's Step 2 finding that her impairments did not meet or medically equal a listed impairment. In particular, she claims that the ALJ should have found that she was mentally retarded and met Listing 12.05C. Defendant maintains that this aspect of the ALJ's decision is supported by substantial evidence.[2]

The exhibits introduced at the administrative hearing include two reports describing the results of intelligence testing. Dr. Stevens, a clinical psychologist, administered the WAIS-III to plaintiff in March, 2002. He interpreted the results as follows: Verbal IQ: 70; Performance IQ: 76; and Full Scale IQ: 70. Intellectually, Dr. Stevens felt plaintiff was functioning in the borderline mental retardation range. Academically, he felt she was achieving at the third grade level (R. 130-31).

In July, 2004, Dr. Deppe, a licensed clinical psychologist, administered the WAIS-III to

---

[2] Considering the limited focus of plaintiff's argument, the Court restricts its discussion to materials relevant to the Step 2 finding.

plaintiff. He interpreted the results as follows: Verbal IQ: 87; Performance IQ: 83; and Full Scale IQ: 84. Dr. Deppe felt plaintiff's intellectual functioning was in the low average range (R. 138-141).

The listings are contained in 20 C.F.R. pt. 404, Subpt. P, App. 1. They describe various physical and mental illnesses and abnormalities according to the particular body system that is affected. The listing for mental retardation requires, in pertinent part, significantly subaverage general intellectual functioning and a valid verbal, performance, or full scale IQ of 60 through 70. 20 C.F.R. Subpt. P, App. 1, § 12.05C.

The ALJ viewed the different IQ scores as a conflict in evidence describing the severity of plaintiff's reduced level of intellectual functioning. The ALJ resolved the conflict by considering the surrounding circumstances, deeming Dr. Stevens' results to be "not wholly accurate," and giving more weight to the results obtained by Dr. Deppe (R. 16).

The parties concede that the medical evidence describing the level of plaintiff's intellectual functioning was in conflict. That is, neither party holds the view that both test results were accurate, such that plaintiff's ability to function intellectually improved over time. Hence, the issue is whether the ALJ erred in resolving the conflict in the scientific evidence by giving more weight to standardized test scores obtained by Dr. Deppe in July, 2004.

In the absence of reasons to find that plaintiff's ability to function intellectually improved between March, 2002, and July, 2004, the ALJ faced three options: reject both reports, give equal weight to both reports, or give one report greater weight than the other. Because plaintiff did not have a treating relationship with either psychologist, neither report was entitled to controlling weight. 20 C.F.R. § 404.1527(d), 416.927(d). In these circumstances, ALJs typically look for consistency. An opinion that is consistent with the record as a whole generally deserves more weight. *Id*. The ALJ followed this approach and found that Dr. Deppe's scores were consistent with

other portions of the record describing plaintiff's personal and academic activities.

The record substantially supports the ALJ's decision to resolve the evidentiary conflict in this manner. Other portions of the record indicate that plaintiff functioned at a level above mental retardation. She took care of her personal needs, paid bills by writing checks, performed some household chores, participated in hobbies, played games, shopped, and attended church functions. She performed some care-taking tasks for children and her mother, who was ailing. She completed special education classes in grade school and high school, earning above-average grades. She graduated from high school and worked in an assembly line for several years. With assistance, she completed college-level courses on the subject of child care. At the evidentiary hearing, she indicated that she reads, writes reports, studies, and attends classes two days per week (R. 76-81, 97, 130, 139, 249-261). While this information does not show that plaintiff can perform substantial gainful activity, a reasonable ALJ might view it as generally more consistent with Dr. Deppe's description of low average intelligence and less consistent with Dr. Stevens' borderline mental retardation assessment. Under these circumstances, the Court should not disturb the ALJ's resolution of the conflicting evidence. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).

**II.     Conclusion**

IT IS RECOMMENDED that the Commissioner's final decision regarding Freda M. Satterfield's applications for disability benefits and supplemental security income be AFFIRMED.

SUBMITTED:   October 4, 2007   .

*S/Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**